UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN O.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. C18-5650-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in (1) finding her mental impairments to be not severe at step two, (2) discounting her subjective testimony, and (3) assessing certain medical opinion evidence. (Dkt. # 12 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1978, has three years of college[1], and has worked as a tribal clerical administrator, delivery driver, and retail security guard. AR at 259, 287. Plaintiff was last gainfully employed in February 2011. *Id*. at 311.

In September 2014, Plaintiff protectively applied for benefits, alleging disability as of January 16, 2013.[2] *Id*. at 232-46. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 138-41, 149-56. After the ALJ conducted a hearing on March 6, 2017 (*id*. at 41-76), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-29.

Utilizing the five-step disability evaluation process,[3] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since December 14, 2013, the beginning of the adjudicated period.

Step two: Plaintiff's carpal tunnel syndrome, obstructive sleep apnea, inflammatory arthritis, and fibromyalgia are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]

Residual Functional Capacity: Plaintiff can perform light work with additional limitations: she can never climb ladders, ropes, or scaffolds; and never work at unprotected heights, or in proximity to hazards such as heavy machinery and dangerous moving parts. She can occasionally climb ramps and stairs, as well as balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger. She can perform work in which concentrated exposure to extreme cold, heat, respiratory irritants and vibration are not present. Considering the effects of pain and medication as well as intermittent mental health symptoms, she can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration, and in which the tasks are predetermined by the employer.

---

[1] The Court notes there is a conflicting record which states Plaintiff has four or more years of college. AR at 270.

[2] Despite this alleged onset date, the period adjudicated by the ALJ's decision begins on December 14, 2013, due to the effect of prior administratively final denials. *Id*. at 15.

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

*Id*.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. *Id*. at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err at Step Two

At step two, the ALJ found, *inter alia*, that Plaintiff's anxiety disorder, substance addition disorder, and somatoform disorder were medically determinable but not severe, because they did not satisfy the "paragraph B" criteria for the mental disorder listings. AR at 18-19. Plaintiff argues that the ALJ's erroneous interpretation of the medical evidence "may" have led the ALJ to erroneously exclude mental impairments at step two, but does not identify any error in the ALJ's discussion of the "paragraph B" criteria. (Dkt. # 12 at 11-12.) As explained *infra*, however, the Court finds that Plaintiff has not met her burden to show that the ALJ erred in assessing the medical evidence, and neither has Plaintiff met her burden to establish the existence of a step-two error.

### B. The ALJ Did Not Err in Discounting Plaintiff's Testimony

The ALJ discounted Plaintiffs allegations of physical limitations because they were inconsistent with the objective medical evidence and her physical activities. AR at 23. The ALJ also cited evidence of symptom exaggeration, drug-seeking behavior, non-compliance, and Plaintiff's criminal history. *Id*. at 23-24. Plaintiff contends that these reasons are not legally sufficient.[5]

#### *1. Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial

---

[5] The Commissioner does not defend the ALJ's reasoning regarding history and non-compliance. (Dkt. # 16 at 6 n.1.) This order addresses only the disputed reasons; the conceded reasons are harmless in light of the other valid reasons provided by the ALJ. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

ORDER - 4

evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *Objective Medical Evidence*

The ALJ summarized many treatment notes indicating normal findings, as evidence that does not support Plaintiff's allegations of physical disability. AR at 23-24. Plaintiff notes that

lack of support from objective medical evidence is not alone a reason to discount a claimant's testimony. (Dkt. # 12 at 13-14.) That may be true, but the ALJ did not solely rely on a lack of evidentiary support, and did not err in considering the extent to which Plaintiff's allegations are consistent with the medical record. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

### 3. Activities

The ALJ noted that the record described Plaintiff's participation in certain physical activities that undermine her allegations of disability: the ALJ specifically mentioned Plaintiff's ability to play basketball with her children in May 2014, her ability to walk more than a mile multiple times a day with her dog in May and June 2016, and her new gym membership mentioned in a May 2016 treatment note. AR at 23-24 (citing *id*. at 499, 943, 1055). The ALJ found that Plaintiff's self-reported activities "conflict[] with the allegations that she is physically disabled." *Id*. at 24.

Plaintiff argues that her ability to sporadically participate in physical activities does not undermine her allegations, because she explained at the hearing that she could no longer walk those long distances and rarely used her gym membership, and there was no evidence that she regularly played basketball. (Dkt. # 12 at 14-15 (citing AR at 53-54).) It may be true that the activities described by the ALJ were not performed with regularity throughout the adjudicated period, but the activities are nonetheless inconsistent with Plaintiff's allegations. Even if this reason is arguably less persuasive in light of the relatively few references to these activities, any

error is harmless in light of the ALJ's other, more supported reasons. *See Carmickle*, 533 F.3d at 1162-63.

### *4. Exaggeration and Drug-Seeking*

The ALJ noted that one of Plaintiff's treating providers, Kyong H. Kim, D.O., described her as having a "significant over reaction to every symptom[] and injuries seeking immediate medical attention and utilizing significant medical resources with poly-pharmacy." AR at 972. The ALJ went on to highlight two treatment notes suggesting drug-seeking behavior. *Id*. at 24 (citing *id*. at 1014, 1048). Plaintiff argues that these two episodes of drug-seeking behavior were cherry-picked from a long record that does not otherwise suggest drug-seeking or exaggeration. (Dkt. # 12 at 15.)

The Court disagrees with Plaintiff's characterization of the record. There are many treatment notes even beyond those cited by the ALJ that suggest concern regarding Plaintiff's use of prescription medication and/or symptom exaggeration, and the ALJ's reasoning is therefore amply supported. *See, e.g.*, AR at 614 (February 2015: treatment note indicating Plaintiff complained of "pain but did not appear uncomfortable aside from ice pack on wrist"), 809-13 (April 2016: Plaintiff reports some of her medications were taken by her sister; primary care physician ("PCP") "explained [his] hesitancy to give her further medications" and says he will screen her urine at the next appointment), 882-85 (April 2016: Plaintiff reports that some of her medications were stolen and PCP stated "that there would be no further early refills and that this could result in her being dismissed from the practice if this were to happen again"), 914 (December 2014: PCP is "somewhat hesitant to give [Plaintiff] any type of short acting opioid"), 1006 (March 2016: treating provider indicates that Plaintiff's "demeanor is uncharacteristic of severe pain, having no facial signs of pain but with movement she is screaming out, and once I

leave the room she starts to wail"), 1022 (February 2016: treatment provider finds that Plaintiff's "[i]nterview and exam appears inconsistent with report of pain"), 1096 (February 2016 treatment note: "[Plaintiff] appears to be on a higher dose than she is being prescribed, though assures me that this is not the case. I'd recommend that she see her PCP or a pain management specialist in order to have all of her pain meds coming from one source."), 1331 (October 2016 treatment note indicating that Plaintiff had been recently hospitalized due to "overuse/unintentional overdose of pain medications" and primary care provider expresses "concern about her use of medications"). Evidence of drug-seeking behavior and symptom exaggeration are clear and convincing reasons to discount Plaintiff's subjective allegations. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Thus, because the ALJ provided multiple legally sufficient reasons to discount Plaintiff's testimony, this part of the ALJ's decision is affirmed.

**C.     The ALJ Did Not Err in Assessing the Medical Evidence**

Plaintiff contends that the ALJ erred in discounting two opinions provided by treating providers. The Court will address each disputed opinion in turn.

*1.     Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and

convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

## 2. *Charles Power, M.D.*

Dr. Power, Plaintiff's PCP, completed a check-box form opinion describing Plaintiff's limitations in March 2017. AR at 1578-83. Dr. Power completed the sections of the form that asked him to rate Plaintiff's limitations in a variety of areas, but left blank all of the parts of the form that asked him to identify the specific clinical findings that support those limitations. *Id*.

The ALJ gave partial weight to Dr. Power's opinion, indicating that she did not give it greater weight because he failed to explain with specific citations to clinical evidence how and why the claimant is limited in the manner indicated. *Id*. at 25-26. The ALJ found Dr. Power's indications as to Plaintiff's stand/walk restrictions, manipulative limitations, reaching restrictions, driving limitations, noise limitations, and climbing restrictions to be either inconsistent or unsupported by clinical evidence. *Id*. The ALJ did credit Dr. Power's opinion as to Plaintiff's ability to climb ladders, ropes, and scaffolds, and her ability to work at unprotected heights or around hazards. *Id*.

Plaintiff argues that the ALJ erred in discounting Dr. Power's opinion as unexplained because the opinion was based on "significant experience with Plaintiff and supported by numerous records." (Dkt. # 12 at 6.) For the most part, Plaintiff does not cite any portion of Dr. Power's treatment records that do support the limitations the ALJ rejected, however, and thus has not shown that this case is similar to *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (indicating that the ALJ erred in failing to recognize that a check-box form was "based on significant experience with [plaintiff] and supported by numerous records, and [was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). Plaintiff does specifically dispute the ALJ's finding that Dr. Power's opinion regarding manipulative limitations was inconsistent with evidence showing improvement in carpal tunnel

syndrome (AR at 25): Plaintiff argues that her other conditions could have caused manipulative limitations, and thus carpal tunnel improvement does not necessarily contradict Dr. Power's opinion. (Dkt. # 12 at 7.) But Plaintiff does not point to any evidence suggesting that her other conditions did cause manipulative limitations, and thus has not met her burden to show error in the ALJ's decision. Her speculation is not sufficient.

Plaintiff also suggests that the ALJ erred by giving more weight to a State agency reviewing physician's opinion over Dr. Power's opinion, but the ALJ did not cite a State agency opinion as a reason to discount Dr. Power's opinion. (Dkt. # 12 at 3, 6.) The ALJ is entitled to discount a treating physician's contradicted opinion upon providing a specific, legitimate reason to do so, and Dr. Power's complete lack of reference to support in the clinical record is such a reason. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Lastly, Plaintiff suggests that the ALJ erred in failing to discuss the regulatory factors set out for assessing medical opinions. (Dkt. # 12 at 8.) Plaintiff is mistaken. There is no requirement than an ALJ explicitly discuss the regulatory factors. *See Kelly v. Berryhill*, 732 Fed. Appx. 558, 562-63 n.4 (9th Cir. May 1, 2018) (clarifying *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)). Two of the regulatory factors are supportability and consistency with the record, both of which the ALJ expressly discussed, which suggests that the ALJ's assessment of Dr. Power's opinion is consistent with the regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. Accordingly, the Court affirms the ALJ's assessment of Dr. Power's opinion.

### 3. *James Robinson, M.D.*

Plaintiff was referred to Dr. Robinson, a pain specialist, for evaluation of her pain complaints in June 2016. Dr. Robinson examined Plaintiff once and provided a narrative report and recommendations for Dr. Power. AR at 939-48. At the time that Dr. Robinson wrote his narrative report, he had not been able to review Plaintiff's intake paperwork and did not have access to many of her medical records. *Id*. Dr. Robinson indicated that his understanding of Plaintiff's diagnostic picture was incomplete at several points in the report. *Id*. at 942 ("It was difficult for me to get a clear time line regarding the onset and progression of [Plaintiff's pain and headaches]"), 943 (Dr. Robinson documents Plaintiff's report of her medical team and her medication regimen, but she cannot remember all of the details), 945 ("It is not clear whether several of her symptoms could be understood in terms of her psoriatic arthritis. . . . I am not sure where neurologic dysfunction fits into her overall set of problems."), 946 ("I believe she needs to see a neurologist because of her very striking balance problems. As far as I know, she does not have a diagnosis to account for these difficulties. . . . A complicating factor is that I am not clear on her psychotropic medication regimen now."). Nonetheless, Dr. Robinson concluded that Plaintiff is "severely incapacitated" by her pain, noting that she had been out of the workforce since 2012 and is getting assistance from a caretaker. *Id*. at 945.

The ALJ assigned little weight to Dr. Robinson's opinion that Plaintiff is "severely incapacitated," finding that opinion to be unsupported by the record. *Id*. at 26. The ALJ also described Dr. Robinson's report as "tentative," in light of the ways in which he indicated he was limited by lack of information. *Id*. The ALJ also discounted Dr. Robinson's report of Plaintiff's "very striking balance problems," finding that this observation was not consistently repeated in

the remainder of the record, and speculating that Plaintiff's presentation could have been caused by her high dose of opioid medication. *Id.* at 26-27.

The Court agrees with Plaintiff that the ALJ's speculation regarding the cause of Plaintiff's balance problems is not a legitimate reason to discount Dr. Robinson's opinion, given the ALJ's lack of medical expertise. But this error does not infect the remainder of the ALJ's assessment of Dr. Robinson's opinion: the ALJ did not err in discounting Dr. Robinson's provisional opinion as inconsistent and uncorroborated by the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). Dr. Robinson himself indicated that he was unsure of many aspects of Plaintiff's condition, and his lack of familiarity with Plaintiff's longitudinal record is another valid reason to discount his opinion. *See* 20 C.F.R. §§ 404.1527, 416.927.

Because the ALJ provided specific, legitimate reasons to discount Dr. Robinson's opinion, the Court affirms that portion of the ALJ's decision.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 23rd day of April, 2019.

                                                  MICHELLE L. PETERSON
                                                  United States Magistrate Judge